**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| TIMOTHY EUGENE BRIDGES, | : | |
| Individually and as Next of Kin, and as | : | |
| Administrator of the Estate of | : | |
| EDDIE C. BRIDGES, deceased, | : | |
| | : | |
|     Plaintiff, | : | CASE NO.: 1:09-CV-56 (WLS) |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF AMERICUS, et al., | : | |
| | : | |
|     Defendants. | : | |
| | : | |

## ORDER

Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 55). For the following reasons, Defendants' Motion for Summary Judgment (Doc. 55) on all of Plaintiff's federal claims is **GRANTED.**

## I.   PROCEDURAL HISTORY

On April 7, 2009, Plaintiff Patricia Bridges Tatum filed a Complaint in the above-captioned matter, challenging the City of Americus' loitering ordinance as unconstitutionally vague, and alleging violations of federal constitutional and statutory rights, brought pursuant to 42 U.S.C. § 1983, and various state law claims. (Doc. 1.) Plaintiff brought these claims against the City of Americus, Georgia, "d/b/a Americus Police Department" and on its own, Officer Michael Middleton, individually and in his official capacity, and Chief James Green, individually and in his official capacity. (*Id.*) On November 20, 2013, after the close of discovery, Defendants moved for summary judgment on Plaintiff's claims on the following grounds: 1) the Americus Police Department is not an entity capable of being sued; 2) the claims against individual Defendants in their official capacities are redundant of the claim against the City of Americus; 3) the individual Defendants are entitled to qualified immunity as to the

federal claims; 4) neither the City of Americus nor Chief Green engaged in any activities that would give rise to liability under § 1983; 5) Plaintiff failed to make out a prima facie case under the Americans with Disabilities Act; 6) Defendants are entitled to sovereign and official immunity as to the state law claims; 7) Plaintiff has failed to make out a claim for wrongful death; and 8) Plaintiff cannot recover punitive damages against Defendants.  (*See* Doc. 55-2.)

On December 30, 2013, Plaintiff filed a Response.  (Doc. 69.)  On January 15, 2014, Defendants filed a Reply.  (Doc. 75.)  On February 6, 2014, with leave from the Court, Plaintiff filed a Surreply.  (Doc. 81.)  Thus, the above-referenced Motion is ripe for review.  *See* M.D. GA. L.R. 7.3.1(a).

## II.   SUMMARY JUDGMENT STANDARD

### A.  Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, No. 12-14291, 2014 WL 114125, *2 (11th Cir. Jan. 14, 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

2

(1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009).  The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *See Celotex*, 477 U.S. at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsushita*, 475 U.S. at 586 (citations omitted).  Instead, the nonmovant must point to competent record evidence that would be admissible at trial.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form.").  Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant.  *See* FED. R. CIV. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.  However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law.  FED. R. CIV. P. 56(c).

### B. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried.  Response shall be made to each of the movant's numbered material facts.  All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's

> statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. GA. L.R. 56.  Here, Defendants properly filed a summary judgment motion with a statement of undisputed facts, as is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.  (*See* Doc. 55-1.)  Likewise, Plaintiff filed the proper response to Defendants' statement of material facts.  (Doc. 70.)  Having established the applicable standards, the Court will proceed to the facts.

## III.   RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Defendants' Answer (Doc. 6); Defendants' Statement of Undisputed Facts (Doc. 55-1); Plaintiff's Response to Defendants' Statement of Material Facts (Doc. 70); and the record in this case.  Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  *See* FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 322-23.

Eddie Bridges suffered from seizures from the time of his childhood, and also had a history of hypertension.  (Docs. 55-1 at ¶ 1, 70 at ¶ 1.)  He was hospitalized around 1999 because he was having frequent seizures.  (Docs. 55-1 at ¶ 2, 70 at ¶ 2.)  Mr. Bridges took seizure medication from the age of twelve but continued to have seizures on a regular basis.  (Docs. 55-1 at ¶ 3, 70 at ¶ 3.)  Medical personnel attended to him at a Dollar General store and his home because of seizures.  (*Id.*; *see* Doc. 59 at 91-92)  In 2005, he was diagnosed with paralysis of his left side due to a seizure, as well as a possible stroke.  (*Id.*)  Mr. Bridges would occasionally be disoriented after suffering from a seizure.  (Docs. 55-1 at ¶ 4, 70 at ¶ 4.)

Mr. Bridges worked at Davidson Textron for 14-15 years before he began to receive social security disability payments.  (Docs. 55-1 at ¶ 5, 70 at ¶ 5.)  Once he began receiving disability benefits, Mr. Bridges spent much of his time at Wheatley Plaza in Americus, Georgia, which is private property.  (Docs. 55-1 at ¶ 6, 70 at ¶ 6.)  He would

move shopping carts and run errands for the merchants that worked at the shops at Wheatley Plaza.  (Docs. 55-1 at ¶ 7, 70 at ¶ 7.)

Officer Michael Middleton began working as a corrections officer in 2000, when he was 19 years old.  (Docs. 55-1 at ¶ 10, 70 at ¶ 10.)  He worked at Macon State Prison from 2000 until he began working at the Americus Police Department in 2002.  (Docs. 55-1 at ¶ 11, 58 at 11 lns. 12-21, 70 at ¶ 11.)  Chief James Green was one of Officer Middleton's superiors at the Americus Police Department.  (Doc. 57 at 11-12.)  Prior to April 16, 2007, neither Officer Middleton nor Chief Green knew that Mr. Bridges suffered from a seizure disorder.[1]  (*Id.* at 127 lns. 16-22; Doc. 58 at 154 lns. 8-11.)

On April 16, 2007, an unidentified person called Chief Green's office and complained about people loitering at Wheatley Plaza, drinking alcohol, and asking customers for money.[2]  (*See* Doc. 57 at 179-80.)  Lieutenant Merrill Lee was advised about the complaint.[3]  (*Id.* at 178-79; *see* Doc. 69-3 at 1.)  Lieutenant Lee notified Officer Middleton of the April 16, 2007 complaint that related to "intoxicated subjects loitering in the area and harassing customers, asking for money."  (Doc. 69-3 at 1.)  The Americus Police Department had previously received complaints about similar behavior.  (Doc. 57 at 91.)  Officer Middleton drove toward Wheatley Plaza around 11:00 a.m. on April 16,

---

[1]  The Court finds that there is no dispute of fact as to whether Officer Middleton and Chief Green had knowledge of Eddie Bridges' physical or mental disabilities.  The only contrary suggestion in the record is an alleged statement by Eddie Bridges, relayed by Patricia Bridges Tatum at her deposition.  (Doc. 59 at 75 lns. 11-14.)  To the extent that that testimony is offered for the truth of the matter arrested, it is hearsay that does not fall within any exception.  *See* Fed. R. Evid. 803.  As such, it cannot be considered for the purpose of summary judgment.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form.").  The only other evidence cited by Plaintiff to suggest that Officer Middleton or Chief Green knew of Eddie Bridges' physical or mental disorders is a memorandum offered by Major Richard McCorkle.  (Doc. 70 at 4.)  That memorandum contained a statistic that, "[o]f the 35 sworn member of the Americus Police Department approx[imately] 54% were unaware prior to [April 16, 2007] that Eddie Bridges suffered from any health or mental issues."  (Doc. 69-11 at 2.)  Without any evidence to suggest that Officer Middleton or Chief Green were part of the 46% of officers aware of Mr. Bridges' conditions, that statistic offers no credible evidence of such.

[2]  The Parties have not identified any evidence to suggest that the April 16, 2007 complainant was a merchant.  (Docs. 55-1 at ¶ 16, 57 at 179-80, 70 at ¶ 16.)

[3]  It is unclear whether it was Chief Green or his secretary who notified Lieutenant Lee of the complaint.  (*See* Docs. 57 at 179-80, 69-3 at 1.)  However, the Court finds that the exact person who notified Lieutenant Lee is immaterial, and that issue therefore does not present an issue of material fact.

2007.  (Docs. 55-1 at ¶ 24, 70 at ¶ 24.)   As he approached Wheatley Plaza, Officer Middleton saw Mr. Bridges standing on the sidewalk in front of the Goodwill store, drinking from a large can.  (Doc. 58 at 85-88.)  Officer Middleton did not observe Mr. Bridges acting intoxicated or asking any person for money.  (*Id.*)  Officer Middleton parked and exited his vehicle near Eddie Bridges without notifying dispatch of his actions.  (Docs. 55 at ¶ 27, 70 at ¶ 27.)  At that time, other people were walking to and from their cars in the parking lot, but no one else was standing holding a drink can without any apparent legitimate purpose.  (Docs. 55 at ¶ 28, 70 at ¶ 28.)  Officer Middleton asked Mr. Bridges about the nature of his business at Wheatley Plaza.  (58 at 146-47.)  Mr. Bridges did not provide Officer Middleton with a responsive answer, and did not inform him that his presence was permitted by the merchants.  (Docs. 55 at ¶ 31, 58 at 146-47, 70 at ¶ 30.)  Officer Middleton told Mr. Bridges that he could not hang out in that area and needed to leave.  (Doc. 58 at 147.)  After Mr. Bridges refused to leave, Officer Middleton again requested that he leave.  (Doc. 58-1 at 9.)  When Mr. Bridges again refused to leave the area, Officer Middleton removed his handcuffs to arrest Mr. Bridges for "non-compliance."  (*Id.*)  Mr. Bridges then struck Officer Middleton in the side of his face with the drink can.[4]  (Docs. 55-1 at ¶ 35, 58 at 196, 70 at ¶ 35.)  Although Officer Middleton did not originally include the fact that Mr. Bridges struck him with the drink can in his report, he later amended the report to include that fact.[5]  (Docs. 55 at ¶ 36 & 37, 58 at 109-12, 70 at ¶¶ 36 & 37.)

---

[4]  The only record statements that potentially contradict the assertion that Mr. Bridges struck Officer Middleton with his drink can are statements made by Patricia Bridges Tatum and Jacqueline Bridges during their depositions.  (Doc. 70 at ¶ 35.)  However, those statements are hearsay and do not fit within any exception.  *See* FED. R. EVID. 803.  As such, they cannot be considered for the purpose of summary judgment.  *See Jones*, 683 F.3d at 1294 (citation omitted).  Also, it is unclear whether Mr. Bridges was holding the can when he struck Officer Middleton with it.  According to witness Johnise L. Robinson, Mr. Bridges threw the can at Officer Middleton.  (Doc. 69-4 at 1-2.)  Because the Court finds that Ms. Robinson's statement could be reduced to admissible form for trial—i.e. she could testify at trial from her personal knowledge—her statement will be considered for the purpose of summary judgment.  In any event, there is no competent evidence to contradict the various witnesses' statements that Mr. Bridges struck Officer Middleton with the drink can.

[5]  The evidence is uncontested that amendment to the report was proper under Americus Police Department policy and there is no suggestion based on competent evidence that such was impermissible.  (Doc. 58 at 101-02.)  More importantly, the Court finds that there is no genuine dispute as to whether Mr. Bridges struck Officer Middleton with a drink can.

After Officer Middleton was struck in his face with the can, he took Mr. Bridges to the ground. (Docs. 55 at ¶ 39, 58-1 at 9, 70 at ¶ 39.) Mr. Bridges continued to struggle with Officer Middleton, which resulted in damage to Officer Middleton's uniform. (*Id.*) Officer Middleton placed one handcuff on one of Mr. Bridges' wrists, but Mr. Bridges rolled onto his back and continued to struggle with Officer Middleton. (Docs. 55 at ¶ 40, 58-1 at 9, 70 at ¶ 40.) At that time, Mr. Bridges told Officer Middleton that he was about to have a seizure.[6] (Doc. 69-4 at 2.) Officer Middleton struck Mr. Bridges in his face with a closed fist 2-3 times.[7] (Docs. 55 at ¶ 41, 69-1 at 1, 70 at ¶ 41.) After the punches, Officer Middleton rolled Mr. Bridges onto his stomach and called for help. (Doc. 58-1 at 10.) Officer Middleton positioned himself on Mr. Bridges' back until assistance arrived. (Docs. 55 at ¶ 45, 70 at ¶ 45.) Once other police officers arrived, Mr. Bridges' other wrist was handcuffed. (*Id.*)

Because Mr. Bridges' eye was swelling and bleeding where Officer Middleton struck him, EMS was called. (Docs. 55 at ¶ 46, 70 at ¶ 46.) While waiting for EMS to arrive, Officer Middleton retrieved the drink can, poured out its contents, and placed the can into evidence.[8] (Docs. 55 at ¶ 47, 70 at ¶ 47.) The drink can was a 25.5-ounce, 8-

---

[6] Johnise L. Robinson provided a statement that indicated that Mr. Bridges told Officer Middleton that he was about to have a seizure before Officer Middleton struck him. (Doc. 69-4.) The Court finds that the evidence could be reduced to admissible form and can therefore be considered on summary judgment because Ms. Robinson could testify from her personal knowledge at trial. *See Jones*, 683 F.3d at 1294. Because the Court construes the evidence in a light most favorable to Plaintiff, the Court construes the evidence to show that Mr. Bridges made the referenced statement *before* Officer Middleton struck him.

[7] The Parties disagree as to whether Joann Dodson's statement that she witnessed Officer Middleton strike Eddie Bridges in the face 2-3 times may be considered for the purpose of summary judgment. (*See* Docs. 75 at 3, 81 at 1.) The Court finds that the statement may be considered on summary judgment because it could be "reduced to admissible form" for trial, such as if she testified at trial from her personal knowledge. *See Jones*, 683 F.3d at 1294 (citation omitted). The Court notes that another witness asserted that Officer Middleton struck Mr. Bridges only one time. (Doc. 69-4 at 2.) Because the Court construes the evidence in a light most favorable to Plaintiff, the Court construes the evidence to show that Mr. Bridges was hit 2-3 times.

[8] Plaintiff asserts that there is a factual dispute as to whether Officer Middleton violated the Americus Police Department's policy against disturbing physical evidence by pouring out the contents of the can. (Doc. 70 at ¶ 47.) It is unclear why such would create an issue of fact as to whether Officer Middleton placed the can into evidence or otherwise presents a genuine issue of material fact. Further, it is unclear why pouring out the contents of the can would constitute the destruction of evidence. Plaintiff claims that Officer Middleton struck Mr. Bridges because Mr. Bridges spilled his beverage on Officer Middleton. However, no competent evidence supports that version of events. (*See* Docs. 60 at 8, 69-1, 69-4.) In any

inch can of Arizona fruit punch.  (Docs. 55-1 at ¶ 48, 70 at ¶ 48.)  When EMS personnel arrived, Mr. Bridges was taken to the urgent care center at Sumter County Regional Hospital.  (Docs. 55-1 at ¶¶ 59-62, 70 at ¶¶ 59-62.)  Personnel at the urgent care center advised that they were unable to treat Mr. Bridges because their facility had been recently damaged by tornadoes.  (Docs. 55-1 at ¶¶ 60 & 62, 70 at ¶¶ 60 & 62.)  Mr. Bridges had to undergo surgery to reduce the swelling in his eye.  (Docs. 55-1 at ¶ 67, 70 at ¶ 67, 70-5.)  Mr. Bridges' upper eyelid was lanced to allow the blood to drain, and he was released from the hospital that same day.  (Docs. 55-1 at ¶ 68, 70 at ¶ 68, 70-5.)

## VI.  ANALYSIS

As a preliminary matter, the Court notes that Plaintiff did not respond to Defendants' arguments that the City of Americus Police Department is not a legal entity capable of being sued or that Plaintiff's claims against the individual Defendants in their official capacities are redundant of the claim against the City of Americus.  The Court agrees with Defendants' assertions.  The Americus Police Department is not capable of being sued.  *See Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006); *Lovelace v. Dekalb Cent. Probation*, 144 F. App'x 793, 795 (11th Cir. 2005).  Also, the claims against the individual Defendants in their official capacities are treated as suits against the City of Americus.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  As such, the Court construes Plaintiff's Complaint as asserting claims that (1) the City of Americus' loitering ordinance is unconstitutional; (2) Officer Middleton violated his Fourth Amendment rights by falsely arresting and falsely imprisoning him; (3) Officer Middleton violated his Fourth Amendment rights by using excessive force; (4) Chief Green violated his Fourth Amendment rights by participating in the constitutional violations perpetrated by Officer Middleton; (5) the City of Americus should be held liable under § 1983 for deliberate indifference; (6) the City of Americus and Chief Green failed to train Officer Middleton and such failure led to constitutional violations; and (7) all Defendants are liable for various state law violations.  (*See* Doc. 1.)

---

event, pouring out the can's contents did not deprive any Party of credible evidence and whether Officer Middleton did so is immaterial to this suit.

## A.    <u>City of Americus' Loitering Ordinance</u>

Defendants argue that Plaintiff "arguably lacks standing" to challenge the City of Americus' loitering ordinance because Eddie Bridges "was not arrested for loitering." (Doc. 75 at 4.)   Plaintiff does not specifically address whether he has standing to challenge the ordinance, but states that, because Officer Middleton "was responding to a complaint about loitering . . . it is important to first start with the elements of the crime of loitering under both the City of Americus Ordinance [ ] and Georgia law." (Doc. 69 at 13.)

Plaintiff has standing if he can show (1) that he suffered an injury in fact "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)). Here, Mr. Bridges was not arrested under the loitering ordinance, and Defendants do not argue that Officer Middleton's reliance on the ordinance entitled him to take any action or otherwise entitles him to any privileges or immunities under state or federal law.  Also, because Mr. Bridges is deceased, he does not face the threat of arrest under that ordinance in the future.  Further, for reasons discussed below, that ordinance has no bearing on the outcome of this suit.  Thus, the injury asserted by Plaintiff would not be redressed if the loitering ordinance was declared unconstitutional.  Accordingly, the Court finds that Plaintiff does not have standing to challenge the City of Americus' loitering ordinance.[9]

---

[9] Because the loitering ordinance had not been ruled unconstitutional at the time of the incident, Defendants cannot be held liable for enforcing it.  *See Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005) (constitutional right not clearly established at the time statute was enforced because, at the time of enforcement, the statute had not been declared unconstitutional).

**B.**   **Qualified Immunity**

    **1.   Unlawful arrest and false imprisonment claims**

Defendants argue that Officer Middleton is entitled to qualified immunity as to Plaintiff's unlawful arrest and false imprisonment claims because he had arguable reasonable suspicion to detain Eddie Bridges, and arguable probable cause to arrest him. (Doc. 75 at 5.) Defendants claim that, based on Officer Middleton's observation of Mr. Bridges standing in front of Wheatley Plaza drinking from a large can, the previous complaints of individuals drinking alcohol and harassing customers for money, and the complaint received on the morning of the incident, Officer Middleton had reasonable suspicion to believe that he had the authority to lawfully instruct Mr. Bridges to leave the premises. (Doc. 55-2 at 19.)   According to Defendant, once Officer Middleton instructed Mr. Bridges to leave the premises and he refused, Officer Middleton had arguable probable cause to arrest Mr. Bridges for obstruction and criminal trespass under Georgia law. (Doc. 75 at 9.) Further, Defendants claim that, once Mr. Bridges hit Officer Middleton in the face with the drink can, Officer Middleton had probable cause to arrest him for aggravated assault. (*Id.*)

Plaintiff argues that, because Mr. Bridges was arrested for "noncompliance," Defendants cannot now rely on obstruction and criminal trespass for the purpose of establishing qualified immunity.   (Doc. 69 at 26.)   Plaintiff claims that, even if Defendants can rely on the asserted bases for arguable reasonable suspicion and arguable probable cause, the undisputed facts demonstrate that Mr. Bridges was not trespassing and did not obstruct Officer Middleton from performing his official duties. (*Id.* at 27.) Further, Plaintiff asserts that Defendants cannot rely on criminal trespass for any purpose because Officer Middleton did not have reason to believe that he was acting as an authorized representative of the owners or rightful occupants of Wheatley Plaza. (*Id.* at 28-29.)

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have

known.' " *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  "In order to receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)) (internal citations omitted).  "An officer acts within the scope of his discretionary authority when his conduct is undertaken pursuant to the performance of his official duties." *Clark v. City of Atlanta*, 544 F. App'x 848, 852 (11th Cir. 2013) (citing *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).  Here, there is no factual dispute that Officer Middleton was acting within the scope of his discretionary authority.  As such, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

Officer Middleton is not entitled to qualified immunity if the undisputed facts show that his conduct violated a clearly established constitutional right.  *See Scott v. Harris*, 550 U.S. 372, 377 (2007) (citations omitted).  Qualified immunity is appropriate if the undisputed facts demonstrate either (1) Officer Middleton did not violate a constitutional right, or (2) the constitutional right was not clearly established at the time of the violation.  *Clark*, 544 F. App'x at 852.  The Court may consider either of those factors first, as appropriate.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Officer Middleton is entitled to qualified immunity as to the referenced claims if he possessed arguable reasonable suspicion that Mr. Bridges was committing a crime at the time of the stop, and arguable probable cause to arrest Mr. Bridges for any offense at the time of the arrest.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007).  An officer "may stop and briefly detain a person to investigate a reasonable suspicion of criminal activity" where the reasonable suspicion is supported by a "particularized and objective basis to suspect unlawful conduct." *United States v. Torres-Bonilla*, No. 13-11301, 2014 WL 718426, *3 (11th Cir. Feb. 26, 2014) (citations omitted).  " '[R]easonable suspicion' . . . requires a showing considerably less than preponderance of the evidence." *Clark*, 544 F. App'x at 853-54.  "Probable cause exists when the totality of the

circumstances warrants a reasonable belief that the suspect has committed or is committing a crime." *Id.* (citing *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007)).

"[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." GA. CODE ANN. § 16-10-24. A person's refusal to comply with an officer's lawful command constitutes obstruction under Georgia law. *See Townsend v. Coffee Cnty.*, 854 F. Supp. 2d 1345, 1358 (S.D. Ga. 2011). A person commits the offense of criminal trespass when he or she knowingly and without authority . . . [r]emains upon the land or premises of another person . . . after receiving notice from . . . an authorized representative of the owner or rightful occupant to depart." GA. CODE ANN. § 16-7-21(b)(3).

The Court finds that Officer Middleton had a reasonable suspicion that Mr. Bridges was committing the offense of criminal trespass when Officer Middleton first approached Mr. Bridges.[10] The Americus Police Department had previously received numerous complaints that people were loitering, drinking alcohol, and harassing customers for money. Also, Officer Middleton had knowledge that a complaint was received earlier in the day regarding the same type of activity. Upon arrival, Officer Middleton observed Mr. Bridges standing on the sidewalk at Wheatley Plaza, drinking from a large drink can. Based on Officer Middleton's knowledge of the referenced complaints, he had arguable reasonable suspicion that Mr. Bridges was remaining at Wheatley Plaza without authority and thus committing the offense of criminal trespass.

Further, the Court finds that Officer Middleton obtained probable cause to believe that Mr. Bridges was committing the offense of criminal trespass. Because merchants had complained of people trespassing in the past, and a complaint had been received earlier that day—albeit not necessarily from a merchant in fact—it was reasonable for Officer Middleton to conclude that merchants at Wheatley Plaza

---

[10] The Court assumes without deciding that Mr. Bridges was detained or stopped when initially approached by Officer Middleton.

authorized him, as an officer of the Americus Police Department, to instruct such trespassing individuals to leave the premises. Officer Middleton asked Mr. Bridges why he was standing at that location, but Mr. Bridges did not answer the question or explain that he was permitted to be at that location. After Mr. Bridges continued to refuse to return responsive answers to Officer Middleton's questions and refused to leave the premises, Officer Middleton had arguable probable cause to believe that Mr. Bridges was committing the offense of criminal trespass.

Lastly, the Court finds that Officer Middleton had probable cause to believe that Mr. Bridges was committing the offense of obstruction. For the reasons stated above, Officer Middleton reasonably believed that Mr. Bridges refused the lawful instruction to leave the premises. Because Mr. Bridges failed to leave when so instructed, Officer Middleton had arguable probable cause to arrest Mr. Bridges for obstruction. *See Townsend*, 854 F. Supp. 2d at 1358.

The Eleventh Circuit Court of Appeals' recent decision in *Clark v. City of Atlanta*, 544 F. App'x 848 (11th Cir. 2013), supports this Court's conclusion in this matter. In that case, Ms. Clark was walking with her two sons, Timothy and Montellis, in front of a house that appeared to be vacant. *Id.* at 851. Two police officers, who had knowledge that the area had recently been subject to a string of burglaries, including some that targeted vacant homes, observed the three individuals in front of the house. *Id.* As the officers approached, they noticed that Montellis Clark had his hands in his pockets, so the officers drew their guns as they exited their vehicle. *Id.* The police officers and Montellis Clark's family members told Montellis Clark to comply with the officers' commands to remove his hands from his pockets, but he refused. *Id.* Eventually, Montellis Clark removed a gun from his pocket and received gunshot wounds that resulted in his death. *Id.* After noting the lax arguable reasonable suspicion standard, and that the Court was constrained to consider only the undisputed facts as they were "available to the officer at the moment," the Court concluded that the officers were entitled to qualified immunity. *Id.* at 853-54. The Eleventh Circuit found that "the officers had at least arguable suspicion that the Clarks might have been engaged or

were about to engage in criminal activity." *Id.* at 854.  Also, because Montellis Clark had his hands in his pockets, the officers were "justified in exiting their car with their weapons drawn for their own protection until they could determine whether Montellis Clark posed a threat to them or anyone else." *Id.*

The Court finds that this matter, although factually distinct, is analogous to *Clark*. When Officer Middleton first contacted Mr. Bridges, Officer Middleton had reasonable suspicion that Mr. Bridges was violating the law based on Officer Middleton's knowledge of previous complaints of people loitering, drinking, and harassing customers for money.  After Mr. Bridges was unresponsive to Officer Middleton's questions, failed to explain to Officer Middleton that he was permitted to be at Wheatley Plaza, and refused to leave the premises, Officer Middleton had probable cause to believe that Mr. Bridges was violating the law.  *Compare Turner v. Jones*, 415 F. App'x 196, 199-200 (11th Cir. 2011) (finding that a genuine issue of material fact was presented as to whether officer had arguable probable cause to arrest for obstruction under Georgia law because undisputed facts did not demonstrate that suspect "violate[d] any order or command of the officer").  Although Montellis Clark and Eddie Bridges were not necessarily engaging in illegal acts in fact when police officers arrived, the police were nonetheless justified based on their knowledge of the circumstances at the relevant time.

In hindsight, it is undisputed that Mr. Bridges was permitted by at least some of the merchants at Wheatley Plaza to be at that location.  However, the Court is mindful that, for the purpose of analyzing the claim of qualified immunity, the facts must be viewed objectively in light of the facts known by Officer Middleton at the time of the incident, and in a light most favorable to Plaintiff.  *See Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (citations omitted); *see also* FED. R. CIV. P. 56.  Because the Court finds that Officer Middleton was acting with arguable reasonable suspicion to stop Mr. Bridges at the time of the stop, and probable cause to arrest Mr. Bridges at the time of

the arrest, he is entitled to qualified immunity as to Plaintiff's claims of false imprisonment and false arrest.[11]

### 2. Excessive force claim

Defendants argue that Officer Middleton used the least possible force reasonably necessary to effectuate the arrest, and thus did not use excessive force. (Doc. 55-2 at 23.) Defendants claim that Officer Middleton only struck Mr. Bridges after he resisted Officer Middleton's attempt to handcuff him and struck Officer Middleton in his face with a drink can. (*Id.*) Plaintiff asserts that Officer Middleton used excessive force in violation of the Fourth Amendment to the extent that the evidence is viewed as showing that Officer Middleton struck Mr. Bridges because Mr. Bridges spilled some of his beverage on Officer Middleton's clothing. (Doc. 69 at 33.) Plaintiff also claims that Chief Green should be held liable for excessive force because he directed Officer Middleton to instruct Mr. Bridges to leave Wheatley Plaza. (*Id.* at 21.)

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 6 (1985)). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* The proper application of the Fourth Amendment reasonableness test in the context of excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Garner*, 471 U.S. at 8-9). "[A]n officer is entitled to qualified immunity from an excessive force claim 'unless the application of the excessive force standard would inevitably lead every reasonable official in the officer's position to conclude the

---

[11] To the extent Plaintiff argues that Chief Green should be liable under § 1983 for false arrest or false imprisonment, Chief Green is entitled to summary judgment because the Court finds that no constitutional violations occurred.

force was unlawful." *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (citing *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993)).   "The excessive force standard 'looks to the need for force, the amount of force used, and the injury inflicted.' "   *Hamilton v. City of Jackson*, 261 F. App'x 182, 186 (11th Cir. 2008) (citing *Jones*, 121 F.3d at 1460).

The Court finds that Officer Middleton did not use excessive force.  Plaintiff's argument to the contrary fails because his version of the facts is not supported by competent evidence.  The only assertions in the record that support Plaintiff's recitation of the facts are comments made by Patricia Bridges Tatum and Jacqueline Bridges during their respective depositions.  However, those individuals admitted that their knowledge was based exclusively on comments made by Eddie Bridges.  (*See* Doc. 60 at 8.)  Because those comments are hearsay and do not fit within any exception, the Court cannot consider them for the purpose of summary judgment.  *See Jones*, 683 F.3d at 1294.

The undisputed facts show that, after the above-detailed interaction, Officer Middleton reached for Mr. Bridges' arm to place him in handcuffs.  Mr. Bridges pulled away and struck Officer Middleton with his can, either by hitting him with it while the can was still in his grip, or by throwing it at him.  Officer Middleton continued to attempt to put Mr. Bridges in handcuffs, but Mr. Bridges continued to resist arrest. After Officer Middleton took Mr. Bridges to the ground and placed a handcuff on one of his wrists, Mr. Bridges turned onto his back and continued to struggle with Officer Middleton.  Mr. Bridges told Officer Middleton that he thought that he was about to have a seizure, but continued to struggle with him.  During the struggle, Officer Middleton's radio was disconnected from his uniform and his collar was torn.  Officer Middleton struck Mr. Bridges in the face 2-3 times.  The force accomplished its intended goal, and Mr. Bridges remained compliant until other officers and EMS arrived.

Although "[t]he crime of misdemeanor obstruction is a crime of 'minor severity' for which less force is generally appropriate," *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1348-49 (11th Cir. 2002)), the violence that ensued in this matter was not merely in response to Mr. Bridges' trespass,

obstruction, or refusal to answer questions. The undisputed facts establish the Mr. Bridges resisted arrest by pulling away when Officer Middleton reached out to handcuff one of Mr. Bridges' wrists, struck Officer Middleton with a drink can, and continued to physically resist arrest until Officer Middleton struck him in his face. *Compare Vinyard*, 311 F.3d at 1347-48 (finding that a question of fact existed at to excessive force claim, because, according to suspect's version of events—which was supported by competent evidence—the officer struck the suspect following an obstruction arrest and suspect was not actively resisting arrest or attempting to flee). In addition, once Mr. Bridges struck Officer Middleton, Officer Middleton had arguable probable cause to arrest Mr. Bridges for simple battery against a police officer.[12] *See* GA. CODE ANN. § 16-5-23. For the reasons stated above, Officer Middleton had arguable probable cause to arrest Mr. Bridges. As such, Mr. Bridges had an obligation to submit to the arrest. The Court further notes that Plaintiff's claim that Mr. Bridges told Officer Middleton that he was about to have a seizure before Officer Middleton punched him in the face does not impact the Court's analysis. Based on the undisputed evidence, "there was no way for Officer [Middleton] to have discerned the reason for [Mr. Bridges'] struggling," or to have known that Mr. Bridges' struggling may have been the result of his seizure disorder. *See Kennedy v. City of Monroeville*, No. 12-00051-KD-C, 2013 WL 4761127, *6 (S.D. Ala. Sept. 4, 2013).

There is no indication that Mr. Bridges was engaging in a serious crime or posed a threat to any person but, from Officer Middleton's perspective, it was reasonable for him to believe that the application of force was necessary to effectuate a lawful arrest. Further, under recent case law in this Circuit, it is likely that the amount of force used by Officer Middleton was *de minimis* and therefore not actionable on an excessive force

---

[12] The Court does not find persuasive Defendants' assertion that Mr. Bridges committed the offense of aggravated assault. In Georgia, aggravated assault requires the offensive use of an object that "is likely to or actually does result in serious bodily injury." GA. CODE ANN. § 16-5-21(a)(2). There is no indication that Officer Middleton suffered "serious bodily injury," and the Parties have submitted no authority to suggest that an Arizona fruit punch drink can or similar item is "likely to . . . result in serious bodily injury." Because the resolution of that issue is not necessary to dispose of this matter, the Court does not address whether Officer Middleton had arguable probable cause to arrest Mr. Bridges for such.

claim.  *See Woodruff v. City of Trussville*, 434 F. App'x 852 (11th Cir. 2011) (punching suspect in face, removing him from car, and throwing him to ground constituted *de minimis* force); *Gomez v. Lozano*, 839 F. Supp. 2d 1309 (S.D. Fla. 2012) (punching suspect in ribs multiple times constituted *de minimis* force because suspect was resisting arrest). For these reasons, the Court finds that the undisputed facts demonstrate that Officer Middleton did not use excessive force.  Because Officer Middleton did not use excessive force, likewise, Chief Green cannot be held liable for excessive force.

### C.    Supervisor liability and failure to train claims

The City of Americus may "be held liable under § 1983 when its employees cause a constitutional injury as a result of the municipality's policy- or custom-based failure to adequately train or supervise its employees."  *Am. Fed'n of Labor & Congress of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1188-89 (11th Cir. 2011) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)).  "The inadequacy of police training may serve as a basis for § 1983 liability 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact.' "  *Carter v. Columbus Consol. Gov't*, No. 13-11945, 2014 WL 1015959, *2 (11th Cir. Mar. 18, 2014) (citing *Gold*, 151 F.3d at 1350).  However, an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."  *See Anderson v. Fulton Cnty. Govt.*, 485 F. App'x 394, 396 (11th Cir. 2012); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (citing *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993)) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise.").  Because the Court has found that a constitutional violation did not occur, the City of Americus cannot be held liable under § 1983, and neither the City of Americus nor Chief Green may be held liable for failure to train.

### D.    Americans with Disabilities Act claim

Defendants argue that they are entitled to summary judgment as to Plaintiff's ADA claim because there is no evidence that Officer Middleton knew that Eddie Bridges had a seizure disorder prior to April 16, 2007.  (Doc. 55-2 at 28.)  Further,

Defendants argue that Officer Middleton had already struck Mr. Bridges when he asserted that he was about to have a seizure. (*Id.*) Lastly, Defendants claim that no evidence has been submitted to suggest that Mr. Bridges was in fact having a seizure at that time. (*Id.*)

Plaintiff argues that Officer Middleton violated the ADA by failing to reasonably accommodate Mr. Bridges' disability because Officer Middleton punched Mr. Bridges in his face after Mr. Bridges said that he thought that he was about to have a seizure. (Doc. 69 at 18.) Plaintiff claims that there is a dispute of fact as to whether, prior to April 16, 2007, Officer Middleton knew that Mr. Bridges suffered from a seizure disorder based on the frequent trips made by various officers of the Americus Police Department to Wheatley Plaza, as well as the significant amount of time that Mr. Bridges spent at that location. (*Id.* at 19.) Further, Plaintiff states that the fact that Officer Middleton wrote "Disabled" on Mr. Bridges' arrest form is an indication that he knew that Mr. Bridges suffered from a seizure disorder. (*Id.*)

"The ADA prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of his disability." *Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009) (citing 42 U.S.C. § 12131). As such, Officer Middleton cannot be held liable for a violation of the ADA. *See id.* However, the ADA imposes respondeat superior liability on employers for the acts of their agents. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). Thus, the City of Americus may be held liable for a violation of the ADA that was committed by Officer Middleton. To state a claim under the ADA, a plaintiff "must prove (1) that he is a qualified individual with a disability; (2) that he was . . . discriminated against by [a] public entity; and (3) the exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

The Court finds that Defendant City of Americus is entitled to summary judgment as to Plaintiff's ADA claim. The evidence does not suggest that Officer Middleton knew that Mr. Bridges suffered from a seizure disorder. Major McCorkle's assertion that 54% of the 35 members of the Americus Police Department knew that

Eddie Bridges suffered from a seizure disorder does not suggest that Officer Middleton or Chief Green had any knowledge of such. Further, there is no indication that any other police officer who knew about Mr. Bridges' condition played any role in the incident that took place on April 16, 2007. Although the evidence supports a finding that Mr. Bridges asserted that he thought he was about to have a seizure *before* Officer Middleton punched him in his face, for the reasons stated above, Officer Middleton's actions were reasonable and justified. Plaintiff "did not present any evidence of intentional discrimination, denial of services on account of [Mr. Bridges'] disability, or refusal to make requested reasonable accommodations." *See Rylee*, 316 F. App'x at 906 (holding that prima facie case of ADA discrimination had not been demonstrated because police officers did not know plaintiff needed reasonable accommodation). In any event, because Mr. Bridges was continuing to resist arrest, the evidence does not suggest that, even if requested, any reasonable accommodation could have been made under those circumstances. Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADA claim.

      **E.**    **State law claims**

Because Defendants have been granted judgment as a matter of law over all claims over which the Court has original jurisdiction, the Court declines to continue to exercise jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367. The Court has not found any reason to continue to exercise jurisdiction over those claims, and finds that prejudice will not result. *See id.* § 1367(d) (state law claims tolled for thirty days following dismissal). Accordingly, Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 55) is **GRANTED.** It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by his Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of Defendants as to Plaintiff's federal claims. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.** Accordingly, Defendants' Motion to Exclude the Testimony

of Plaintiff's Expert (Doc. 62) and Plaintiff's Motion to Strike the Affidavit of Defendant's Expert Kris Sperry and Plaintiff's Motion in Limine to Exclude the Testimony of Defendant's Expert Kris Sperry and, in the Alternative, to Require the Defendants to Produce Defendant's Expert Kris Sperry for Deposition and Brief in Support Thereof (Doc. 71) are **DENIED AS MOOT.** Because the Court has resolved all matters in this case based on the record, Plaintiff's Request for Oral Argument (Doc. 78) is **DENIED AS MOOT.**

**SO ORDERED**, this  31st  day of March 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**